**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:08-CV-71-__-__**

| | |
|---|---|
| DMG AMERICA, INC., <br>     a Delaware Corporation, <br><br>     Plaintiff <br><br> v. <br><br> RT PRECISION MACHINERY, LP, <br>     a Texas Limited Partnership, <br><br>     Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### PROCEDURAL HISTORY AND FACTS

The relevant procedural history and pertinent facts may best be summarized as follows: In a complaint filed with this Court on February 22, 2008, plaintiff alleges to be a Delaware corporation with its principal place of business in Itasca, Illinois. Plaintiff further alleges to have contracted with defendant, RT Precision Machinery (hereinafter "RT"), a Texas limited partnership, with its principal place of business in Houston, Texas for a milling machine on or around September 2006. (Compl. ¶¶ 1, 2, 3, 7). Specifically, the complaint states that RT made a down payment to plaintiff of $49,500 at the time of purchase on or around September 2006. (Compl. ¶¶ 1, 2, 3, 7). The milling machine was delivered on December 27, 2006 and installed in January 2007. (Compl. ¶¶ 11, 12) However, RT informed plaintiff that the studies and representations made by plaintiff to defendant at the time of the formation of the purported

contract were untrue because the machine was unsuitable for milling the parts pertinent to RT's commercial needs.

The complaint further alleges that an invoice - attached to the complaint as Exhibit A - dated December 10, 2006 requesting full payment for the balance of $451,633.30 was forwarded to RT and the balance has since gone unpaid. (Compl. ¶ 19). Most poignantly, attached to the invoice forwarded to defendant, plaintiff slipped in an unsigned, undated boilerplate form contract, which plaintiff alleges contains the terms of the subject sale. Specifically, plaintiff alleges that the purported contract contains a consent to jurisdiction or permissive forum selection clause. (Compl. ¶ 5). Section 11 of the invoice states in pertinent part that, "[b]uyer submits to the <u>nonexclusive</u> jurisdiction of the Courts of North Carolina in respect of any claim, right or cause of action arising under the agreement." (Emphasis added). However, for the reasons articulated below, this purported diversity action for breach of contract was improperly filed in this court.

## ARGUMENT

**I.  THIS COURT LACKS PERSONAL JURISDICTION OVER RT, BECAUSE THE PURPORTED FORUM SELECTION OR CONSENT TO JURISDICTION CLAUSE IS INVALED AND DEFENDANT LACKS THE REQUISITE MINIMUM CONTACTS WITH NORTH CAROLINA SUCH THAT THIS COURT LACKS PERSONAL JURISDICTION OVER RT IN ACCORDANCE WITH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.**

When a federal court chooses to exercise jurisdiction by virtue of the parties' diversity of citizenship it is obliged to apply state substantive law. <u>Media Gen. Broad. of S.C. Holdings, Inc. v. Pappas Telecasting of the Carolinas</u>, 152 F. Supp. 2d 865, 867 (W.D.N.C. 2001). In North Carolina, "the interpretation of a contract is governed by the law of the place where the contract was made." <u>Id.</u> (citing <u>Tanglewood Land Co. v. Byrd</u>, 299 N.C. 260, 261 S.E.2d 655, 656 (N.C.

2

Case 3:08-cv-00071-RJC-DCK    Document 4    Filed 04/04/08    Page 2 of 14

1980) (quoting Bueltel v. Liberty Mut. Ins. Co., 134 N.C. App. 626, 518 S.E.2d 205, 209 (1999). Because the complaint alleges that RT purchased the milling machine based on documents and verbal recommendations made by plaintiff's employees, at RT's offices in Texas, Texas law must be applied to the inquiry as to whether mutual assent exists[1] and Texas law clearly shows that defendant did not assent to the purported forum selection, consent to jurisdiction or choice of law clauses on which plaintiff relies. North Carolina law applies to the remainder of the inquiries as set forth below.

> A. **The boilerplate agreement purporting to contain the terms of the sale, including the consent to jurisdiction clause, was never made part of the basis of the bargain and never assented to by RT; hence RT has not waived any objection to challenge this Court's power to exercise personal jurisdiction over it.**

It is well-established in Texas law that:

> The material terms of a contract for sale include: (1) identification of the property being sold; (2) the consideration or price paid for the property; and (3) the parties' consent to exchange the property for the agreed price. John Wood Group USA, Inc. v. ICO, Inc., 26 S.W.3d 12, 20 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). The requisites of a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent it be mutual and binding. Adams v. H & H Meat Prods., Inc., 41 S.W.3d 762, 771 (Tex. App.-Corpus Christi 2001, no pet.). No binding contract is formed where material terms are open for future negotiation. T.O. Stanley Boot Co., Inc. v. Bank of El Paso, 847 S.W.2d 218, 221, 36 Tex. Sup. Ct. J. 259 (Tex. 1992).
>
> "Meeting of the minds" means the parties' mutual understanding and assent to the expression of their agreement. Weynand v. Weynand, 990 S.W.2d 843, 846 (Tex. App.-Dallas 1999, pet.

---

[1] See Hensley v. Ray's Motor Co. of Forest City, Inc., 158 N.C. App. 261, 266, 580 S.E.2d 721, 725 (2003) ("Where the predominant factor of the contract is the sale of goods with the provision of services incidentally involved, as is here the UCC controls."). However, the UCC also provides that, "[u]nless displaced by the particular provisions of this title, the principles of law and equity, shall supplement its provisions." Tex. Bus. & Com. Code § 1.103 (2007).

3

> denied). We base our determination of whether there was a meeting of the minds on an objective evaluation of what the parties said and did rather than on their subjective states of mind. Angelou v. African Overseas Union, 33 S.W.3d 269, 278 (Tex. App.-Houston [14th] 2000, no pet.); Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.-San Antonio 1999, pet. denied). In determining the intent of the parties, we look "to the communications between the parties and to the facts and circumstances surrounding these communications." Angelou, 33 S.W.3d at 278.

Walker v. Estate of Guerrero, No. 13-03-055-CV, 2004 Tex. App. LEXIS 7704 at *5-6 (5th Cir. 2004). The Texas Supreme Court has held that, "[e]vidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (2007). Ultimately, there can be no meeting of the minds based on the secret intentions on the part of one of the parties, and not brought to the attention of the other party. See Pardee v. Universal Life Ins. Co., 170 S.W.2d 852, 855 (1940) (because of appellee's secret intention that the check in question would never be paid, there was no meeting of the minds of the parties). Rather:

> to constitute a contract the minds of the parties must meet with respect to all the subject matter of the agreement . . . and all of them must assent to the same thing in the same sense at the same time. Their assent must comprehend the whole proposition, and the agreement must comprise all the terms which they intend to introduce into it. There is no contract where the terms are not agreed upon.

E. Jacobs Co. v. Lamar H. Moore Drilling Co., 483 S.W.2d 13, 16 (1972).

In the case *sub judice*, the complaint fails to show, in any way, how RT assented to the boilerplate terms and conditions of the sale attached to the December 10, 2006 invoice. Indeed, the complaint on its face shows that defendant did not assent to those terms and conditions. The invoice with the attached purported terms and conditions of sale plainly reveals that is not signed by RT, let alone by plaintiff; nor is it dated, nor does it contain the identification of either

plaintiff or RT or the good sold. Even taken in the light most favorable to plaintiff, the complaint reveals the bargain was consummated, negotiated and the purported contract formed on or around September 2006 when RT submitted the initial down payment. Hence, plaintiff has alleged that defendant <u>made its only payment to plaintiff prior to purportedly being sent the invoice with the Standard Terms and Conditions</u>. Further, the complaint alleges that RT has made no further payments since initial payment, and that defendant informed plaintiff that the machine could not mill the parts it desired. Thus, defendant has not engaged in any conduct that would constitute assent to the terms and conditions of sale because it has made no payments following the date that the invoice with the terms and conditions was allegedly forwarded to defendant.[2]

Therefore, the parties' objective communications and conduct plainly reveal that defendant did not assent to the terms of the boilerplate terms and conditions which contain the forum selection, consent to jurisdiction and choice of law clauses for two central reasons. First, the lack of defendant's signature on the terms and conditions that was forwarded to defendant for the first time after the purported contract was formed, reveals a manifest lack of assent within the meaning of <u>Baylor Univ.</u> <u>see</u> <u>Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co. Inc.</u>, 480 S.W.2d 607, 610 (1972) (parties conduct failed to show that an indemnity clause printed on the work orders had been the subject of actual negotiations or discussions between the parties at any time and hence evidence in the record fell well- short of establishing as a matter of law that the parties had mutual assent); <u>see also</u> <u>Walker</u>, 2004 Tex. App. LEXIS 7704 at *5-6. (The record did not support any conclusion that the parties came to a meeting of

---

[2] Defendant denies that it ever received the invoice or attached terms and conditions, but understands that this motion is based solely on the contents of plaintiff's complaint and attachments.

the minds because defendant did not initial the interlineated sales price and the effective date of the contract remained blank.)

In the present case, the complaint is manifestly devoid of any allegations which show or tend to show that the boilerplate provisions, including the consent to jurisdiction clause, had been the subject of actual negotiations or discussions between the parties from which assent could be found or even inferred. Second, after plaintiff allegedly sent the invoice and boilerplate form to RT, an objective analysis of its conduct or lack thereof, illustrates that RT <u>did not assent</u> to the purported terms of the sale and invoice because no further payments were remitted by Plaintiff to RT. <u>Waldrep v. Texas Emplrs. Ins. Assoc.</u>, 21 S.W.3d 692, 699 (2000) (Texas courts look to the parties' conduct after execution of the documents, and such conduct may be a strong factor in determining just what the real agreement contemplated). Logically, the only action that was left for RT to engage in that would have shown its acceptance of the new terms contained in the boilerplate agreement was to remit payment which the complaint alleges RT did not do. Consequently, since the complaint fails to allege facts sufficient to show mutual assent existed between the parties, either by RT's signature on the form, or by RT's conduct of remitting payment after receiving the invoice of December 10, 2006 regarding the terms of sale in the boilerplate, the consent to jurisdiction clause does not apply. Hence, RT has not contractually waived its right to validly challenge this Courts personal jurisdiction over it.

**B. RT lacks the requisite minimum contacts with North Carolina such that this Court cannot exercise in personam jurisdiction over RT without violating constitutional requirements of fair play and substantial justice.**

> To prevail against a pretrial 12(b)(2) motion to dismiss, a plaintiff must . . . present a prima facie case of personal jurisdiction. <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir.1989). When determining whether a plaintiff has done so, this court must resolve all questions of fact, and draw reasonable inferences, in the light most

favorable to the plaintiff. Id. Any of the plaintiff's uncontroverted allegations must be taken as true. Barclays Leasing v. Nat'l Bus. Sys., 750 F.Supp. 184, 186 (W.D.N.C.1990). However, if the defendant has countered these allegations with facts, then the plaintiff must come forward with her own facts showing why personal jurisdiction exists. IMO Indus., Inc. v. SEIM s.r.l., No. 3:05CV420, 2007 U.S. Dist. LEXIS 40947, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006).

Scholl v. Sagon RV Supercenter LLC, No. 5:06CV120, 2008 U.S. Dist. LEXIS 18941 at *15 (W.D.N.C. 2008). Specifically:

> [f]ederal Courts exercise personal jurisdiction in the manner provided by state law. For this court to have jurisdiction over [RT], North Carolina's long arm statute must authorize jurisdiction and the defendant must be afforded its constitutional right to due process. North Carolina courts have interpreted N.C. Gen. Stat. § 1-75.4(1)(d) to permit the exercise of personal jurisdiction to the outer limits allowable consistent with the due process clause of the United States Constitution. Thus, when personal jurisdiction is determined under this statutory provision, the only question is whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process.

Id. (internal citations and quotation marks omitted). Accordingly, the Fourth Circuit has reiterated the well-established principle of constitutional law, which states that:

> [b]efore a court can exercise in personam jurisdiction over a defendant, that defendant must have "certain minimum contacts with [the district] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (internal quotation marks omitted). To exercise general jurisdiction and satisfy the due process clause, a defendant's contacts with the district must be "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). However, "even 'continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction].'" Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting International Shoe, 326 U.S. at 318).

Pacas v. Showell Farms, Inc., Nos. 95-1811, 95-2784, 1996 U.S .App. LEXIS 8751 at *4 (4th Cir. 1996). Finally, in determining whether minimum contacts exist, this Court may examine the following pertinent factors: "(1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action, and (4) the interest of the forum state and convenience." Marschburn v. 2001 Enterprises, Inc., No. 6:95CV00609, 1995 U.S. Dist. LEXIS 19657 at *8 (M.D.N.C.1995).

In applying these principles to the instant case, this Court should conclude, as did the Middle District in Marschburn, that it would be unconstitutional to assert personal jurisdiction over RT. In Marschburn, the Court made the following pertinent observations in ascertaining that exercising personal jurisdiction over defendant would violate traditional notions of fair play and substantial justice:

> Defendant is a South Carolina corporation authorized to do business only in the state of South Carolina. The Defendant does not maintain a business office or a registered agent in North Carolina. The Defendant has no contract for the sale of goods or services with any North Carolina corporation. The Defendant lacks any property interest within the state of North Carolina and has never been sued in North Carolina. Furthermore, the Defendant maintains no bank account or other financial relationship with the state of North Carolina. In fact, none of the Defendant's officers, directors, or employees live in North Carolina nor have these officers ever made any business-related trips on the behalf of the Defendant to North Carolina.

Id. at *9. In the instant case, even taken in the light most favorable to plaintiff, the complaint fails to reveal that RT had any contact, let alone purposeful minimal contacts with the state of North Carolina. Specifically, RT is a Texas limited partnership with its principle place of business in Houston, Texas. The complaint fails to allege that RT maintains a business office or registered agent in North Carolina. The complaint is also devoid of any allegation that any part of the contract was formed or performed in North Carolina. Rather, the complaint alleges that

defendant entered into a purported contract for the sale of goods from a Delaware Corporation with its principle place of business in the state of Illinois. Hence, due to the manifest lack of minimum contacts with North Carolina, it would be fundamentally unfair for this Court to exercise personal jurisdiction over RT in the Western District of North Carolina and plaintiff's complaint should be dismissed.

### II. NORTH CAROLINA IS AN IMPROPER VENUE TO ADJUDICATE THIS ACTION IN ACCORDANCE WITH 28 U.S.C. § 1391, IS A *FORUM NON CONVENIENS* AND HENCE THE CAUSE SHOULD BE DISMISSED.

For the same reasons that RT did not assent to the terms of sale contained in the boilerplate form contract and consequently did not waive its right to assert that this Court's personal jurisdiction over it, RT has likewise not waived its right to challenge the Western District of North Carolina as an improper venue.

#### A. The United States District Court for the Western District of North Carolina is an Improper Forum to adjudicate the instant action under § 1391 because none of the statutory requirements are met.

28 U.S.C. § 1391(a) provides that the proper venue for plaintiff to pursue the instant claim is:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Most poignantly, "the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action when an objection to venue has been raised under Federal Rule of Civil Procedure 12(b)(3). Hackos v. Sparks, 378 F. Supp.2d 632, 633 (M.D.N.C. 2005). Accordingly, 28 U.S.C. § 1406(a) authorizes the district court of a district

in which is filed a case laying venue in the wrong division or district to dismiss the action for improper venue.

In Hakos, the Court dismissed plaintiff's complaint and concluded that plaintiff failed to establish that venue is appropriate in the Middle District of North Carolina for, *inter alia*, the following reasons: "neither Defendant resides in the Middle District of North Carolina, as both parties reside in the Western District of Virginia, and the automobile accident giving rise to Plaintiff's claim occurred in the Western District of Virginia." Id. at 633.

Similarly, in the present case, RT does not reside in the Western District of North Carolina and the contract giving rise to plaintiff's claim was negotiated and made in Texas. Consequently, the Western District of North Carolina is plainly an improper forum pursuant to 28 U.S.C. § 1391(a) and therefore plaintiff's complaint should be dismissed.

> **B. Assuming *arguendo* that the consent to jurisdiction clause was assented to by RT, the United States District Court for the Western District of North Carolina is still *a forum non conveniens* as a matter of law and plaintiff's action should be dismissed.**

It is a well-established principle of law that:

> The doctrine of forum non conveniens provides the district court with the discretion to dismiss a case where it finds that when weighed against [the] plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum.
>
> In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 91 L. Ed. 1055, 67 S. Ct. 839 (1947), the Supreme Court identified the relevant public and private interests that a court should consider in evaluating a forum non conveniens motion. The relevant private interests include:
> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; possibility of view of the premises if view would be appropriate to the action; and all other practical

> problems that make trial of a case easy, expeditious, and inexpensive.
>
> The relevant public interests include: administrative problems resulting from court congestion; the local interest in having localized controversies decided at home; the interest in having trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems and conflicts of law or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. Id.
>
> The Supreme Court refined the forum non conveniens inquiry in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981), by stressing that convenience is the critical concern, and that the district court should follow a flexible approach in assessing the Gilbert factors. The Supreme Court stated that dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. Nevertheless, when plaintiff chooses its home forum, there is generally a presumption that the forum is convenient, and dismissal based on forum non conveniens is thus rarely appropriate.

S & D Coffee, Inc. v. GEI Autowrappers, 995 F.Supp. 607, 609 (M.D.N.C. 1997). In addition, because the clause at issue in the purported agreement is a "consent to jurisdiction clause" as it merely specifies a court empowered to hear the litigation, but does not require a party to utilize a specific forum, "this type of clause does not impact the Court's decision of the appropriate forum." Firstar Bank, N.A. v. InterLease, No. 1:01CV706, 2002 U.S. Dist. LEXIS 20974 at *14 (M.D.N.C. 2002).

In S & D Coffee, the court, in conducting its analysis, relied heavily on the fact that plaintiff had chosen his home forum, and was hence entitled to a strong presumption that North Carolina was a convenient forum for the resolution of his dispute. S & D Coffee, at *611. Specifically, the court also recognized that plaintiff did not choose North Carolina to harass defendant or to take advantage of favorable law. Id. Consequently, the court reasoned that,

11

pursuant to supporting affidavits supplied by both parties, source of proof issues and witness availability issues did not weigh heavily in either direction. Also, considering that the allegedly defective machine was situated in North Carolina, a jury might need to view the same and hence this factor weighed slightly in favor of jurisdiction in North Carolina. Finally, the court noted that there was no significant docket congestion and that the auxiliary administrative difficulties in connection with adjudicating the dispute in North Carolina were minimal. Id. Therefore, the court denied defendants motion to dismiss pursuant to the doctrine of forum non conveniens.

The case at bar, however, warrants a different result under the analysis articulated by the Court in S & D Coffee. In the instant case, plaintiff has not chosen his home forums of either Delaware or Illinois. Consequently, plaintiff is not entitled to a presumption that North Carolina is a convenient forum for the resolution of this dispute. Specifically, it is manifestly curious as to why the boilerplate language in the purported agreement selecting North Carolina law and North Carolina courts as appropriate could be so for any other reason than to harass defendant or take advantage of North Carolina law, considering that plaintiff has failed to illustrate in any fashion that it has any business ties or otherwise to the state of North Carolina. In addition, the cause of action here, like in S & D Coffee, centers on a defective piece of machinery that is commercially impracticable to move hundreds or thousands of miles across the country for a jury to view. Hence, because the equipment at issue here is situated in Texas, this factor weighs against retaining plaintiff's litigation in the Western District of North Carolina. Furthermore, all witnesses and proof necessary for trial are situated in a number of locales, namely Delaware, Illinois and Texas, all outside of Western District of North Carolina. Finally, the transportation costs for all involved would be unduly burdensome and oppressive.

In addition, because this is a diversity case, and North Carolina law provides that the law of the State in which the contract was made is the law that the court must use to interpret the contract, conflict of law difficulties emerge. Specifically, because the alleged contract was made in Texas, North Carolina federal courts are generally not in the business of applying the substantive law of Texas. Again, this factor weighs in favor of dismissal. Finally, a North Carolina jury would be unduly burdened with deciding a case which both the subject matter and the parties involved have no connection with North Carolina. For the reasons articulated above, North Carolina, then, represents the paradigmatic forum non convenines; the public and private balancing factors weighing heavily against adjudicating this action in North Carolina, the same should be dismissed.

## CONCLUSION

For the reasons set forth above, RT respectfully requests that this Court enter an order dismissing plaintiff's complaint for lack of personal jurisdiction, improper venue or for forum non conveniens.

This the 4th day of April, 2008.

/s/ G. Gray Wilson
G. Gray Wilson (NCSB #7398)

/s/ Kevin B. Cartledge
Kevin B. Cartledge (NCSB #24167)
*Attorneys for Defendant*

**OF COUNSEL:**

WILSON & COFFEY, LLP
110 Oakwood Drive, Suite 400
Winston-Salem, NC 27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*:GWilson@WilsonCoffey.com
        KCartledge@WilsonCoffey.com

13
Case 3:08-cv-00071-RJC-DCK   Document 4   Filed 04/04/08   Page 13 of 14

# CERTIFICATE OF SERVICE

I, Kevin B. Cartledge, hereby certify that on April 4th, 2008 I electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

jbowers@horacktalley.com

/s/ Kevin B. Cartledge
Kevin B. Cartledge (NCSB #24167)
*Attorney for Defendant*

**OF COUNSEL:**

WILSON & COFFEY, L.L.P.
110 Oakwood Drive, Suite 400
Winston-Salem, NC  27103
*Phone*: (336) 631-8866
*Fax*:    (336) 631-9770
*E-mail*:KCartledge@WilsonCoffey.com