UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:08-CV-71-RJC-DCK

| | |
|---|---|
| DMG, AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | MEMORANDUM AND |
| RT PRECISION MACHINERY, LP, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss" (Document No. 14) filed by RT Precision Machinery, LP ("Defendant"). DMG America, Inc. ("Plaintiff") opposes the motion. A hearing was held on May 19, 2009, at which respective counsel presented oral arguments. This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having fully considered the record, including the briefs (Document Nos. 14-16) and oral arguments, the undersigned recommends that the motion be **denied**, based upon the following proposed findings of fact and conclusions law:

### I. Factual Allegations

In its Amended Complaint, Plaintiff alleges that on September 1, 2006, the parties entered into a contract, reflected in a two-page written bill of sale, for the sale of a milling machine ("Deckel Maho DMU 80P") for the purchase price of $495,000.00. (Document No. 11, ¶ 7 and Exh A "Contract"). The Defendant signed this two-page contract and made a down payment of $49,500.00. (*Id*. Exh. B, copy of check). Next to the signature line where Defendant signed, the front page of the contract indicates that:

> "Contract: The terms and conditions set forth herein and on the reverse side hereof shall govern all sales of materials or equipment (the "Product") described on the front side hereof by DMG, Inc. See other side for complete terms and conditions." (*Id.*, Exh. A).

The reverse side of the page provided the "Standard Terms of Sale: Equipment," which included a forum selection clause specifically setting forth that the "Buyer submits to the nonexclusive jurisdiction of the courts of North Carolina in respect of any claim, right or cause of action arising under the Agreement." (Document No. 11, Exh. A, ¶ 11 "Standard Terms of Sale: Equipment"). The paragraph also sets forth that "North Carolina law...shall govern all transactions to which these Standard Terms of Sale apply." (*Id.*). The contract bears the signature of the Defendant's representative "Ted McLean." (*Id.*, Exh. A, p.1).

The Amended Complaint indicates that Plaintiff is a Delaware corporation with its principal place of business in Illinois. (Document No. 11, ¶ 2). In its brief, Plaintiff explains that until 2004, Plaintiff's headquarters were located in Charlotte, North Carolina and that Plaintiff's entire service operation for repairs and other customer service remains in Charlotte, North Carolina. (Document No. 16, p. 15, citing Document No. 7, Declaration ¶ 4). Defendant is a Texas limited partnership with its principal place of business in Houston, Texas. (Document No. 11, ¶ 3).

In its Amended Complaint, Plaintiff indicates that, by agreement of the parties, Plaintiff delivered the milling machine to the Defendant in December of 2006. (Document No. 11, ¶ 8). Plaintiff sent an invoice to the Defendant confirming the total amount due, including the freight charges of $6,133.00 for delivery. (*Id*. ¶ 9, and Exh. C, "Invoice"). Plaintiff submitted a form to Defendant upon delivery, as required by the contract. (*Id*., Exh. A, ¶ 4). The Defendant signed and returned this written form accepting the machine on December 27, 2006. (*Id*., Exh. D, "Machine

Acceptance Verification"). The signatures of the service engineer and customer representative appear on the acceptance verification. (*Id*.).

The Amended Complaint indicates that Plaintiff's technicians installed the machine during January of 2007 and subsequently addressed various concerns raised by the Defendant. (Document No. 11, ¶ 11). Plaintiff indicates that "at all times since installation, the DMU 80P has been fully functional." (*Id*. ¶ 12). Defendant later informed Plaintiff that the machine could not make certain specific parts that Defendant wanted. (*Id*. ¶ 14). Plaintiff alleges it never stated that the machine could make those specific parts and that the contract specifically disclaimed any warranty for a particular purpose. (*Id*. ¶ 15). Plaintiff nonetheless offered to replace the machine at no additional cost to Defendant. (*Id*.). Defendant declined this offer, but kept the machine, refused to return it, and continued to use it without paying for it. (*Id*. ¶ 16-18). Plaintiff indicates that inspection of the machine in January 2009 revealed that the Defendant had used the machine for 2,854 hours. (Document No. 18, ¶ 15). Plaintiff filed suit in North Carolina, in conformity with the forum selection clause in the contract, seeking to recover the remaining amount due on the purchase price, approximately $451,633.30. (*Id*. ¶ 1).

## II. Arguments Presented

The Defendant filed a motion to dismiss pursuant to Civil Rules 12(b)(2) and (3), alleging that this Court lacks personal jurisdiction over the Defendant and that the Western District of North Carolina is an improper and inconvenient forum. The Defendant argues that this Court should not enforce the forum selection clause because the bill of sale does not contain the Plaintiff's signature. Assuming no binding forum selection clause, the Defendant argues that the Plaintiff has not alleged facts in the Complaint sufficient to show that a North Carolina court can exercise personal

jurisdiction over it ("minimum contacts") and that North Carolina is an inconvenient forum.

The Plaintiff responds that the Defendant is bound by the parties' contract, which includes a valid forum selection clause whereby Defendant expressly agreed to personal jurisdiction in North Carolina. Plaintiff argues that the contract provisions are enforceable because Plaintiff provided written acceptance of Defendant's order pursuant to a December 10, 2006 written invoice. Plaintiff asserts that the conduct and relevant writings of the parties show a valid contract and acceptance of its terms. Plaintiff contends that the Defendant waived any objection to personal jurisdiction in this state and that this case was properly filed here. Plaintiff further asserts that exercising personal jurisdiction over the Defendant will not offend traditional notions of fair play and substantial justice because the Defendant sufficiently availed itself of North Carolina law by purchasing equipment that would be serviced in Charlotte, North Carolina. Plaintiff contends that the concept of *forum non conveniens* has no application here.

### III. Conclusions of Law

#### A. Applicable Law

Although the parties engage in a lengthy discussion of "minimum contacts" and related issues, the Court must first determine whether the Defendant consented in a forum selection clause to personal jurisdiction in North Carolina. If it did, then a lengthy analysis of minimum contacts is not necessary. *See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-550 (4th Cir. 2006) (holding in a breach of contract case that courts should treat a motion to dismiss based on a forum selection clause as a motion to dismiss for improper venue

under Rule 12(b)(3));[1] *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG,* 560 F.Supp.2d 432, 4365 (W.D.N.C. 2008) (providing lengthy discussion of applicable laws).

Courts, including this one, have observed that there is much confusion regarding whether to apply state or federal law when deciding a motion to dismiss based on a forum selection clause in a diversity case. "Lower courts have struggled with this question and there has been no definitive word from the Fourth Circuit." *Gita Sports Ltd.*, 560 F.Supp.2d at 437 (applying federal law and observing that this represents the majority view of the circuits); see also, *Rice Contracting Corp. v. Callas Contractors, Inc.*, 2009 WL 21597, *3 (E.D.Va.) (observing that this "is an unresolved question in the Fourth Circuit" and following the "modern view" of federal law that "forum selection clauses are presumptively valid"). In the present case, the result would be the same under either state or federal law. Both will be addressed herein.

### B. State UCC Law, Contract Formation

The Court has jurisdiction over this action by virtue of the parties' diversity of citizenship. 28 U.S.C. § 1332. In North Carolina, a contract is generally governed by the law of the state where the contract was made. *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 261-62 (1980). In Texas, the laws of the forum with the most significant relationship to the contract generally govern. 12 Tex. Jur. 3d Conflict of Laws § 34. However, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Id.*; *Bueltel v. Lumber Mutual Ins. Co.*, 134 N.C. App. 626, 631 (1999), *disc. rev. denied*, 351 N.C. 186 (1999) (enforcing a choice of law provision in a contract

---

[1] In *Sucampo*, the Defendant filed a motion to dismiss pursuant to Rule 12(b)(1), (2), and (3). 471 F.3d at 547.

because the parties intend to make an exception to the presumptive rule that the contract is governed by the law of the place where it was made); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) ("except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.").

Although Defendant assumes that the "agreement was allegedly made in Texas" and argues that Texas law "must be applied to the substantive inquiry as to whether a valid contract between the parties exists" (Document No. 15, pp. 3, 12), the record does not actually indicate where the contract was formed. Even if Texas law were to apply, contractual choice-of-law provisions are typically enforced in Texas. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004); and see, 12 Tex. Jur. 3d, Conflict of Laws § 27.

Moreover, the contract concerns the sale of equipment; hence Article 2 of the Uniform Commercial Code ("UCC") applies. As both states have enacted the UCC, the Plaintiff correctly points out that "any dispute over the substantive law is a false conflict." (Document No. 16, p. 3, fn. 2). N.C. Gen.Stat. § 25-1-301 provides that "when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties." The Texas Uniform Commercial Code contains the identical language See V.T.C.A., Bus. & C. § 1.301; and see, 12 Tex. Prac., Texas Methods of Practice § 24.16 (3d ed.). The contract in the present case has a reasonable relation to North Carolina, given that the Defendant directed all of its service inquiries to Plaintiff's Charlotte division and obtained repairs and servicing of the machine from this division.

The Amended Complaint sets forth that the parties entered a contract for the purchase of the

milling machine and that this contract included a forum selection clause specifying that the Buyer submitted to jurisdiction in the courts of North Carolina and a choice-of-law provision specifying that North Carolina law would apply. (Document No. 11, ¶ 5, and Exh. A. ¶ 11). The contract (bill of sale) attached to the complaint reflects that the Defendant signed this document and consented to North Carolina jurisdiction. See N.C.Gen.Stat. § 25-2-201 (requiring a "writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker"). Plain language on the face of the contract, located immediately next to the signature line, alerted the Defendant that the terms on the reverse page shall "govern all sales of ... equipment." (*Id*.).

The Defendant acknowledged at the hearing that a contract was formed between the parties, but argues that the forum selection clause should not be binding because Plaintiff did not sign the bill of sale. Defendant points to ¶ 4 in the "Standard Terms of Sale," which provides in relevant part that "[t]he agreement of the parties shall take effect upon DMG's written acceptance of the Buyer's order for the purchase of goods subject hereto." Plaintiff points out that it provided written acceptance of Defendant's order by means of the subsequent written invoice (number M1000738) submitted to Defendant on December 10, 2006. (Document No. 16, p. 6, referring to Document No. 11, Exh. C). Section 2-207(1) of the Uniform Commercial Code expressly provides that "a definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon." N.C.Gen.Stat. § 25-2-207(1).[2] In other words, the invoice sufficed as "written acceptance" for purposes of ¶ 4 of the "Standard Terms of Sale" in the contract.

---

[2] N.C.Gen.Stat. § 25-2-207 is the UCC's "battle of the forms" provision.

Moreover, Article 2 of the UCC, as set forth in N.C.Gen.Stat. § 25-2-207(3), provides in relevant part that:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

Accord *Sanders Cotton Mill v. Capps*, 104 F.Supp. 617 (1952) (holding that an acceptance and a binding contract may result from acts and conduct). Here, the parties acknowledge that a contract existed. The Defendant *agreed* to the written terms of the bill of sale, as evidenced by its signature on the document, and "the terms of the particular contract consist of those terms on which the writings of the parties agree." *Senn Bros., Inc. v. Foothills Meat & Produce, Inc.* 2008 WL 2559418, *3 (W.D.N.C. 2008) (applying North Carolina UCC law and finding that the terms included on the invoices became binding upon the parties). Defendant's argument that gap-filling UCC provisions should govern instead is unavailing.

The Defendant signed the contract and thereby agreed to its terms. Defendant did not thereafter dispute any of its terms. Plaintiff proceeded with a written invoice and delivery of the machine. Defendant then signed a written acceptance of the machine. Under these facts and UCC law, a valid contract existed and its "Standard Terms of Sale" apply. The choice-of-law and forum selection clauses contained in those "Standard Terms of Sale" are common features of business contracts, and the Defendant cannot now complain that it should not be bound by the document it signed.

### C. Federal Law, Forum Selection

When a commercial agreement contains a forum selection clause, courts generally enforce the clause. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972) (holding that "a forum selection clause is presumptively valid and enforceable unless the challenger can 'clearly show' that enforcement would be 'unreasonable under the circumstances.' "); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). The burden is on the party objecting to enforcement of the clause to make this showing. *M/S Bremen*, 407 U.S. at 15 (explaining that the "correct approach would have been to enforce the forum clause specifically unless [Defendant] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.").

The Supreme Court of the United States has observed that "it is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court." *National Equipment Rental, Ltd. v. Sukhent* 375 U.S. 311, 315-16 (1964); *see also, Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14 (1985) (observing that forum selection provisions do not inherently offend due process); *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 317 (4th Cir.1982) (recognizing the parties' right to "agree in advance to submit controversies arising out of their contract to the jurisdiction of a given court"); *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F.Supp.2d 602, 607 (E.D.Va. 2008) (explaining that "the U.S. Supreme Court has repeatedly held that forum selection clauses in private contracts are enforceable).

Federal courts in this circuit routinely enforce forum selection clauses. *See Sucampo Pharmaceuticals,* 471 F.3d at 549 (affirming dismissal because forum selection clause specified Japan as the proper forum); *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002) (enforcing forum selection clause); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.

1996) (same); *Bryant Elec. Co., Inc. v. City of Fredericksburg,* 762 F.2d 1192, 1196 (4th Cir. 1985) (enforcing forum selection clause in breach of contract case). The Fourth Circuit Court of Appeals recently reiterated that "a valid forum selection clause, unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction." *Consulting Engineers Corp. v. Geometric Limited*, 561 F.3d 273, 278 (4th Cir. 2009) (citing *National Equipment Rental,* 375 U.S. at 315-16 and *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.")).

In the present case, the parties expressly consented to jurisdiction in North Carolina and to the application of North Carolina law in resolving any disputes under the contract. Absent a showing that the chosen forum is unreasonable or was imposed by fraud or overreaching, the parties' choice should be enforced. *See M/S Bremen,* 407 U.S. at 15 ("the forum clause should control absent a strong showing [by Defendant] that it should be set aside"); *Allen*, 94 F.3d at 928. The Fourth Circuit Court of Appeals explained in *Allen* that a forum selection clause may be unreasonable "if (1) formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Id.* at 928; see also, e.g., *In re Ricoh Corp.*, 870 F.2d at 573-74 (considering whether the clause was "freely and fairly negotiated by experienced business professionals" and whether there was any fraud, duress, misrepresentation, or other misconduct in connection with the contract). The factors are considered together, and no single factor is determinative. *Allen*, 94 F.3d at 928. If analysis of the *Allen* factors results in a determination that the forum selection clause is valid, the motion to

dismiss should be denied.

The present parties do not raise any issues of misconduct ("fraud or overreaching"), and none is apparent from the record. Neither party will be deprived of their day in court or any remedy by virtue of trying this case in North Carolina, rather than Texas. The parties are sizable businesses that engaged in a transaction at arm's length for a half-million dollar machine. No public policy will be contravened by honoring the parties' contractual choice of North Carolina as the forum state. See *M/S Bremen*, 407 U.S. at 15 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought").[3] Nothing in the record suggests that this deal was between "inexperienced or unknowledgeable" individuals of unequal bargaining power. Although the Defendant suggested at the hearing that "boiler-plate" language in the contract (i.e. the forum selection clause) should not bind it, the parties were free to negotiate the terms of the purchase. *Carnival Cruise Lines,* 499 U.S. at 593-94 (upholding non-negotiated forum selection clause as "reasonable").

As to the final factor regarding any "grave inconvenience or unfairness," the record reflects that the Defendant in this case purchased an expensive machine from a company whose entire service division was located in Charlotte, North Carolina. It is difficult to imagine that the Defendant did not envision substantial contacts with North Carolina for the servicing of this

---

[3] North Carolina has a public policy against forum selection clauses with provisions that require North Carolina contracts to be litigated elsewhere. See N.C.G.S. § 22B-3 ("any provision in a contract entered into in North Carolina that requires the prosecution of any action ... that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable."); and see, *Scholl v. Sagon RV Supercenter, LLC,* 249 F.R.D. 230, 242 (W.D.N.C. 2008) (collecting cases and noting that, for the policy to be applicable, the contract must have been formed in North Carolina); *Dove Air, Inc. v. Bennett*, 226 F.Supp.2d 771, 775-76 (W.D.N.C. 2002) (same). Texas has a substantially similar policy.

machine, and in fact, the record reflects that the Defendant dealt on various occasions with the service manager and technicians from Plaintiff's service division in Charlotte, North Carolina. The Plaintiff filed the Declaration of Christopher Reinkemeier, the CEO of DMG America, Inc., indicating that DMG Charlotte, LLC, in Charlotte, North Carolina, is the headquarters "for all parts and service inquiries for all machines and parts sold by DMG America, Inc." (Document No. 7, ¶¶ 5-6). This court may properly consider this evidence in determining a motion under 12(b)(3)). *Sucampo Pharmaceuticals, Inc.*, 471 F.3d at 549-550. Any inconvenience to the Defendant was forseeable at the time the contract was entered. The Defendant cannot now avoid a provision of a freely-entered contract merely because it did not carefully consider the provision when it signed the contract.

The Defendant suggests that this case be transferred to Texas for its own convenience. However, the fact that the Defendant must defend this case in North Carolina does not establish "grave inconvenience or unfairness" that would render the forum selection clause "unreasonable." See *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away."); *Price v. Leasecomm Corp.*, 2004 WL 727028, at *4 (M.D.N.C. 2004) ("[A] party seeking to avoid a forum selection clause must prove more than the inconvenience of litigating in a distant forum.").[4]

---

[4]Defendant argues that even if it agreed to submit to nonexclusive North Carolina jurisdiction and the application of North Carolina law, it may separately challenge venue under 28 U.S.C. § 1391. Plaintiff aptly points out that the parties' initial choice of forum and applicable law weigh heavily in favor of retaining venue in North Carolina and that it would make little sense to transfer the case elsewhere, particularly since North Carolina courts are most familiar with North Carolina law and the case "has strong ties to this state." (Document No. 16, p. 15-16). Even assuming arguendo that Defendant may raise this argument, venue here is

Although the Defendant argues that no witnesses are located in North Carolina, the Plaintiff points out that witnesses, including Price Lefler (the service manager who examined the DMU 80P at RT Precision's request), are located in Charlotte, North Carolina. Plaintiff also points out that all scheduling of service technicians is conducted from the Charlotte location and all service records are located there. (Document No. 7, ¶¶ 8, 10, 11). See, e.g., *AC Controls Co., Inc. v. Pomeroy Computer Resources, Inc.*, 284 F.Supp.2d 357, 361-62 (W.D.N.C. 2003) ("whichever forum is ultimately selected will inevitably burden one side or the other by requiring them to bring themselves and their witnesses from another state"). Taken together, consideration of the four *Allen* factors in the present case favors enforcement of the forum selection clause. *Allen*, 94 F.3d at 928. Hence, the Defendant has voluntarily submitted to jurisdiction in the courts of North Carolina.

### IV. Conclusion

In sum, Defendant signed the contract, thereby agreeing to the terms therein. Plaintiff sent an invoice which constitutes "written acceptance." Under UCC law, the parties formed a valid contract containing forum selection and choice-of-law provisions. Regardless of whether federal or state law is applied regarding the forum selection clause, the same result is reached. The Defendant expressly consented to the jurisdiction of the courts of North Carolina, and the parties' contractual choice of forum should be enforced. The Defendant agreed to submit to personal jurisdiction in North Carolina and to the application of North Carolina law.

**IT IS, THEREFORE, RECOMMENDED** that the Defendant's "Motion to Dismiss" (Document No. 14) should be **DENIED**.

---

appropriate because "a substantial part of the events or omissions giving rise to the claim occurred" in North Carolina. 28 U.S.C. § 1391(a)(2). Defendant has not overcome the strong presumption that the agreed forum here is "convenient."

## V. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: May 28, 2009

David C. Keesler
United States Magistrate Judge